**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GRUNLEY WALSH INTERNATIONAL LLC<br>5010 Nicholson Lane, Ste. 200<br>Rockville, MD 20852 | ) | |
| Plaintiff, | ) | No. 07-492 |
| v. | ) | Judge Futey |
| UNITED STATES, | ) | |
| Defendant. | ) | |
| and | | |
| AMERICAN INTERNATIONAL<br>CONTRACTORS (SPECIAL PROJECTS), INC<br>4600 N. Fairfax Drive, Suite 1004<br>Arlington, Virginia 22203 | ) | |
| Plaintiff-Intervenor. | ) | |

**MOTION TO INTERVENE**

American International Contractors (Special Projects), Inc. ("AICI-SP" or "Plaintiff-Intervenor"), by and through undersigned counsel, respectfully moves this Court, pursuant to Rule 24 of the Rules of the U.S. Court of Federal Claims ("RCFC"), to intervene in the civil claim filed by Plaintiff Grunley Walsh International LLC ("GWI") against Defendant United States (hereinafter "Department of State" or "DOS"). Attached hereto as Exhibit A is Intervenor's Complaint, which serves as the "pleading setting forth the claim or defense for which intervention is sought," as required by RCFC 24(c).

AICI-SP is identically situated to GWI with respect to the issue in this case. DOS withdrew AICI-SP's pre-qualification for the FY 2007 NEC Program for the identical reason that

it withdrew GWI's, and DOS's newly-revealed and erroneous interpretation of the statutory provision at issue harms AICI-SP in the same way that it harms GWI. GWI's arguments in support of its motion for summary judgment also support reversal of the DOS's decision as to AICI-SP.

AICI-SP's intervention in this case will not prejudice any party or disrupt the Court's schedule for resolving this matter. AICI-SP does not seek to disturb the Court's July 3, 2007 Order setting forth the briefing schedule for GWI's motion for summary judgment. AICI-SP seeks to join Plaintiff's Motion for Summary Judgment, but does not intend to file any additional papers or briefs beyond those submitted by GWI. AICI-SP seeks the Court's permission to participate in the oral argument scheduled for July 31, 2007.

## STATEMENT OF FACTS

1. AICI-SP is a wholly-owned subsidiary of American International Contractors, Inc ("AICI"). AICI created AICI-SP as a special purpose company to perform classified contracts for DOS.

2. On January 3, 2007, the DOS issued a Notice of Solicitation for Submissions for Contractor Pre-Qualification ("the Pre-qualification Notice") requesting submissions to pre-qualify firms for design-build services for the FY 2007 NEC Program. Section 1 of the Pre-qualification Notice listed the ten anticipated solicitations: SALMEC-07-R-0006 (Ethiopia), SALMEC-07-R0007 (Madagascar), SALMEC-07-R-0009 (Rep. of Congo), SALMEC-07-R-0011 (Burkina Faso), SALMEC-07-R-0012 (Latvia), SALMEC-07-R-0013 (Bosnia), SALMEC-07-R-0014 (Mexico), SALMEC-07-R-0015 (Saudi Arabia), SALMEC-07-R-0016 (Malta), and SALMEC-07-R-0017 (Zambia) (collectively "the Anticipated Solicitations").

3. Section 2 of the Pre-qualification Notice stated that the project solicitation will consist of two phases: "Phase I - Pre-Qualification of Offerors. This announcement of

solicitation of pre-qualification submissions is Phase I. DOS will evaluate and rate the pre-qualification submissions based on the procedure and evaluation set forth below. . .” and “Phase II - Requests for Proposals from Pre-Qualified Offerors. Those Offerors determined to be pre-qualified in accordance with this notice will be issued a formal Request for Proposal (RFP) for each project and invited to submit proposed pricing in Phase II. . . .”

4. Section 4 of the Pre-qualification Notice contained the Mandatory Pre-Qualification Requirements. It stated in relevant part:

> Omnibus Diplomatic Security and Antiterrorism Act of 1986. Firms being considered for award under this acquisition are limited to “United States Persons” as defined in the Act. The Offeror must complete and submit as part of its pre-qualification package the pamphlet “Certifications Relevant To Public Law 99-399, Statement of Qualifications for Purpose of Section 402 of the Omnibus Diplomatic Security and Antiterrorism Act of 1986.” . . . This is a pass/fail evaluated area. Submissions from Offerors who do not receive a pass rating in this area will not be further evaluated.

5. Section 402 of the Omnibus Diplomatic and Antiterrorism Act of 1986 (“the Act”) provides that only “United States persons” meeting the requirements of the Act may qualify to participate in the embassy construction program. The “Certifications Relevant To Public Law 99-399, Statement of Qualifications for Purpose of Section 402 of the Omnibus Diplomatic Security and Antiterrorism Act of 1986” (“the Certifications”) restated the section 402 requirements. Each potential offeror completes the Certifications – found at 48 C.F.R. § 652.236-72 – to show that it meets the section 402 requirements, and the DOS accepts or rejects the offeror as being pre-qualified for the NEC Program based on those Certifications.

6. Section 402(c)(2)(E) of the Act states, “The term ‘United States person’ means a person which—with respect to a construction project under subsection (a)(1), has achieved total business volume equal to or greater than the value of the project being bid in 3 years of the 5-

year period before the date specified in subparagraph (c)(i)." This requirement is codified at 22 U.S.C. § 4852(c)(2)(E) and is contained in section 5 of the Certifications.

7. AICI-SP filled out and submitted the Certifications on January 19, 2007. AICI-SP 's submission listed gross receipts for business years 2006, 2005, and 2004. AICI-SP's total business volume for those three years, when aggregated, was greater than the value of the projects listed on the Presolicitation Notice for which AICI sought to pre-qualify.

8. On February 23, 2007, the DOS notified AICI-SP that it was pre-qualified for three projects in the FY 2007 NEC Program based on its January 19, 2007, submission. The DOS had also pre-qualified AICI-SP for FY <u>2006</u> on this same basis.

9. On March 8, 2007, Caddell Construction Co. Inc. ("Caddell") filed a bid protest at the GAO ("the Caddell Protest") related to the award of a contract to AICI-SP under the FY <u>2006</u> NEC Program. The contract award was under Solicitation No. SALMEC-060C00034/SED for the New Embassy Complex for Djibouti, Djibouti.

10. In its protest to GAO, Caddell claimed that AICI-SP did not qualify for the Djibouti contract because AICI-SP did not meet the business volume requirement of section 402 of the Act. Caddell argued that the statute requires that the offeror's total business volume must be equal to or greater than the value of the solicited project in three <u>individual</u> years out of the five-year period before issuance of the solicitation. The DOS consistently maintained its longstanding interpretation that the business volume criterion is met by an offeror with <u>cumulative</u> business volume in three years of the five-year period prior to the issuance of the solicitation. AICI-SP supported the DOS's position.

11. The GAO issued its opinion in the Caddell Protest on June 15, 2007. The GAO found that the plain meaning of section 402(c)(2)(E) was ambiguous and that the DOS's

longstanding interpretation of the language should be afforded no deference. Instead, the GAO favored Caddell's proposed interpretation – that the language required the offeror to have business volume equal to or exceeding the value of the project in <u>each</u> of three years within the five-year period.

12. In a letter to AICI-SP dated June 21, 2007, the DOS indicated that it felt compelled to follow the business volume standards "recommended" by GAO in the Caddell protest. Under the revised standards, AICI-SP did not pre-qualify for the program because AICI-SP's business volume was not equal to or exceeding the value of the FY 2007 NEC Program projects in <u>each</u> of three years within the five-year period. Accordingly, the DOS withdrew AICI-SP's pre-qualification status for the FY 2007 NEC Program.

13. The GAO's statutory interpretation was erroneous and failed to give the proper deference due to the DOS's longstanding interpretation of the statute. The DOS should not have withdrawn AICI-SP's pre-qualification based upon revised standards that were the result of GAO's incorrect statutory interpretation.

14. The DOS's withdrawal of AICI-SP's pre-qualification prejudiced AICI-SP because AICI-SP would have had a substantial chance of receiving one or more contract awards for the FY 2007 NEC Program. That AICI-SP would be competitive for these contracts is demonstrated by the fact that AICI-SP competed for four contracts in the NEC Program in FY 2006 and won two of them.

15. AICI-SP will be irreparably harmed and will have no adequate remedy at law for the DOS's unlawful actions if the DOS is permitted to proceed with the Anticipated Solicitations and contract awards without AICI-SP's ability to participate. If the NEC Program contracts are awarded to other companies, it will severely damage AICI-SP's business.

16. AICI-SP has incurred significant overhead costs preparing for the FY 2007 competition, including overseas site visits for the Anticipated Solicitation. AICI-SP will lose the opportunity to compete for the award of the NEC Program contracts and will be deprived of profits and business opportunities under the program.

17. The public interest requires full competition for the NEC Program. Upon information and belief, approximately 13 companies pre-qualified for FY 2007. However, upon information and belief, not all of those contractors will submit proposals for all projects, with some projects having few offerors. Based on the decision in the Caddell Protest, the DOS has withdrawn the pre-qualification of at least three companies. As a result, based upon the number of companies that attended the overseas site visits, some projects may have only one or two offerors.

18. Upon information and belief, none of the scheduled projects for the FY 2007 NEC Program need to be completed on an emergency basis; rather they are all extensive projects that will take up to one to three years to complete. Additionally, the DOS appropriation for the NEC Program is "no-year" funding that will not expire on September 30, 2007.

## ARGUMENT

Pursuant to RCFC 24, a non-party may intervene in a separate civil action as a matter of right or as permitted by the Court. A non-party is entitled to intervene as a matter of right upon a showing of four factors: (1) its application to intervene is timely; (2) it has an interest relating to the property or transaction which is the subject of the action; (3) it is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) its interest is represented inadequately by the existing parties to the suit. RCFC 24(a)(2); *see e.g.*, *Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 761-62 (2006) ("the requirements for intervention [as a matter of right] are to be construed in favor of intervention . . . to protect these

interests which are 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment"') (internal citations omitted) (emphasis in original).

Alternatively, a non-party may be permitted to intervene with the permission, and at the discretion, of the Court where the non-party presents a question of law or fact in common with that presented in the current action and the motion is timely filed. *See* RCFC 24(b); *Honeywell Int'l Inc.* 71 Fed. Cl. at 762. In determining whether to exercise its discretion, the Court will consider whether intervention will unduly delay or prejudice the adjudication of the existing action. *Id.*

## I. Plaintiff-Intervenor Satisfies The Conditions For Intervention As A Matter Of Right Under RCFC 24(A)(2).

### A. Plaintiff-Intervenor's Motion To Intervene Is Timely Filed.

Whether a motion to intervene is timely filed is based on the totality of the circumstances. *See Honeywell Int'l Inc.* 71 Fed. Cl. at 762. The factors to be considered are: (1) length of time during which the would-be intervenor actually knew or reasonably should have known of its rights; (2) a balance of any prejudice to the existing parties to the litigation as a result of allowing intervention with any prejudice to the would-be intervenor as a result of denying intervention; and (3) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Id.; see also Comprehensive Health Services, Inc. v. United States*, 70 Fed. Cl. 700, 718-19 (2006). Each of these factors should be resolved in AICI-SP's favor in this case for the following reasons:

- The Complaint in this action was flied on July 2, 2007, only 17 days ago;
- AICI-SP became aware that plaintiff filed a motion for summary judgment, and the Court's July 3, 2004 Order setting an expedited briefing schedule for that motion, only three days ago and promptly prepared this motion and the accompanying pleading;

- The Court's July 3, 2007 Scheduling Order indicates that Defendant has represented that no contract award under the NEC Program is expected until mid-August of 2007, and sets a briefing schedule on GWI's motion for summary judgment that is apparently intended to allow the Court to resolve the narrow question presented in GWI's protest before mid-August 2007.

- AICI-SP is not requesting permission to file any additional briefs on the motion for summary judgment, nor is it seeking any modification to the Court's July 3, 2007 Scheduling Order;

- AICI-SP does seek to participate in the oral argument scheduled for July 31, 2007, and files this motion and its complaint within a reasonable period of time for other parties to consider its position without undue prejudice; and

- There has been no discovery in this case to date.

Accordingly, very little of substance has occurred in this case and the addition of AICI-SP on related issues will not prejudice any other party to this proceeding.[1] On the other hand, Plaintiff-Intervenor will be unduly prejudiced if not permitted to intervene because the facts and issues in dispute in this case are the same as those that would be presented in the case it would need to bring to assert its rights on these issues. Moreover, even if collateral estoppel could not be asserted against Plaintiff-Intervenor in the next proceeding, the findings and rulings of this Court will be persuasive in subsequent proceedings. The original Complaint concerns issues of fact and law common to Plaintiff-Intervenor's Complaint, and therefore, the Court's rulings in the pending litigation will have a direct impact on any subsequent suit filed by Plaintiff-Intervenor.

Therefore, upon consideration of the totality of the circumstances, including the early stage of the litigation and the lack of prejudice to Plaintiff or Defendant, Plaintiff-Intervenor's Motion to Intervene is timely filed.

[1] To the extent any supplement to the administrative record is necessary as a result of AICI-SP's intervention, AICI-SP believes that it would be minimal.

**B. Second, Plaintiff-Intervenor Has An Interest In The Transactions At Issue In This Case.**

The pending litigation concerns actions taken by DOS with respect to Plaintiff's pre-qualification status for the Fiscal Year 2007 NEC Program. AICI-SP is in the same position as GWI with respect to this issue. Like GWI, AICI-SP was initially pre-qualified for the FY 2007 NEC Program. DOS withdrew AICI-SP's pre-qualification for the FY 2007 NEC Program for precisely the same reason that it withdrew GWI's pre-qualification. The outcome of GWI's protest of the DOS's action will determine whether AICI-SP is able to compete for the contracts in the FY 2007 NEC Prgogram. As a result, AICI-SP has a direct interest in the outcome of the underlying proceeding. *See e.g., Information Sciences Corp v. United States*, 73 Fed. Cl. 70, 95 (2006) (disappointed bidder could intervene as a matter of right under RCFC 24(a); it had an interest in the bid protest because it bid on the contract and was determined to be in the competitive range).

**C. Third, Plaintiff-Intervenor's Ability To Protect Their Interests Will Be Impaired If Intervention Is Denied.**

GWI's Complaint challenges DOS's interpretation of the Act as it relates to the requirement that to qualify as a "United States Person" the person must have achieved "total business volume equal to or greater than the value of the project being bid in 3 years of the 5-year period before the date specified in subparagraph (c)(i)." 22 U.S.C. § 4852(c)(2)(E). The Complaint seeks, among other things, a declaratory judgment that DOS's withdrawal of GWI's prequalification for the FY 2007 NEC Program was irrational, arbitrary and capricious, contrary to law, and of no force or effect, and a declaratory judgment and order directing the DOS to reinstate the prequalification of GWI for the FY 2007 NEC Program to allow GWI to compete for contract awards thereunder.

GWI's principal interest is in its own reinstatement to the program, and is not likely to consider AICI-SP's interest in being reinstated in making its arguments to the Court or in reaching a resolution of the matter with Defendant. Thus, it is possible that the outcome of this case is one that does not necessarily require the DOS to reinstate AICI-SP, and might require AICI-SP would have to initiate its own action to obtain such relief. Therefore, to protect its interests, it is necessary for Plaintiff-Intervenor to intervene in the pending litigation.

### D. Plaintiff-Intervenor's Corporate Interests Cannot Be Adequately Protected If The Case Proceeds Without Its Participation.

GWI has no standing to assert the rights and interests of AICI-SP in this litigation. Only AICI-SP can assert its rights and protect its interests. While the facts and circumstances of GWI and AICI-SP are substantially the same, the rights asserted against DOS differ. AICI-SP must file its own suit to protect its individual interests and redress the particular wrong done to it. Thus, AICI-SP's corporate interests cannot be adequately protected if the case proceeds without its participation.

## II. Plaintiff-Intervenor Also Satisfies The Test For Permissive Intervention Under RCFC.24(B).

Under RCFC 24(b), the Court has discretion to allow intervention where a non-party presents a question of law or fact in common with that presented in the current action and the motion is timely filed. *See* RCFC 24(b). As set forth above, Plaintiff-Intervenor's suit is timely filed. Further, the original Complaint and Plaintiff-Intervenor's Complaint all concern common questions issues relating to DOS's recent interpretation of the "total business volume" requirement of the Act and decision to withdraw its pre-qualification of Plaintiff and Plaintiff-Intervenor for the FY 2007 NEC Program. The very same issues are the subject of Plaintiff-Intervenor's Complaint.

Given the early stages of the suit, intervention will allow for proper and efficient consideration of these common issues of fact and law without prejudice to any party. Moreover, permitting AICI-SP to intervene will prevent the need for duplicative proceedings in a separate action concerning the same underlying facts. Accordingly, intervention promotes the efficient use of judicial resources in this case.

**CONCLUSION**

For the reasons stated above, Plaintiff-Intervenor respectfully requests that the court grant its motion to intervene.

Respectfully submitted,

____________/s/_________________

Scott M. Heimberg
(counsel of record)
Thomas P. McLish
AKIN GUMP STRAUSS HAUER & FELD, LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Intervenor
American International Contractors (Special Projects), Inc.

July 19, 2007