# In the United States Court of Federal Claims

**No. 07-492**
**BID PROTEST**
**(Originally Filed Under Seal August 3, 2007)**
**(Reissued for Publication August 13, 2007)**

| | | |
|---|---|---|
| **GRUNLEY WALSH INTERNATIONAL, LLC.** | * | |
| **Plaintiff,** | * | **RCFC 52.1; Motion for Judgment on the Administrative Record; 22 U.S.C. § 4852; 22 § 4864; Total Business Volume; Plain Meaning; Legislative History; Due Deference** |
| **v.** | * | |
| **THE UNITED STATES,** | * | |
| **Defendant.** | * | |
| **AMERICAN INTERNATIONAL CONTRACTORS (SPECIAL PROJECTS), INC.** | * | |
| **Intervenor.** | * | |

***Frederick W. Claybrook, Jr.***, Washington, D.C., attorney of record for plaintiff, and ***Robert S. Nichols*** and ***Peter J. Eyre***, co-counsel.

***Scott M. Heimberg***, Washington, D.C., attorney of record for plaintiff-intervenor, and ***Thomas P. McLish***, co-counsel.

***Anuj Vohra***, Department of Justice, Washington, D.C., with whom was ***Assistant Attorney General Peter D. Keisler***, for defendant. ***Jeanne E. Davidson***, Director, and ***Brian M. Simkin***, Assistant Director.

**OPINION & ORDER**

***Futey***, **Judge**.

This bid protest is before the court on the parties' cross-motions for judgment upon the administrative record. Plaintiff asks this court to order the Department of State ("DOS") to reinstate its pre-qualification for the FY 2007 New Embassy

Compounds Design-Build Construction Program ("NEC Program"). Plaintiff alleges that the DOS's decision to revoke plaintiff's pre-qualification was irrational, arbitrary, and capricious because a decision of the Government Accountability Office ("GAO"), upon which the DOS relied, was contrary to the plain meaning of the statute and did not give due deference to the DOS's previous interpretation. Plaintiff argues that the business volume requirement contained in section 402 of the Omnibus Diplomatic Security and Antiterrorism Act of 1986, codified at 22 U.S.C. § 4852 (2000), requires that a bidder has achieved a total business volume equal to the value of the contract by cumulating three out of the previous five years. The GAO decided that three out of the previous five years must individually equal the value of the contract. The DOS followed the GAO's interpretation and withdrew plaintiff's and intervenor's pre-qualification for the FY 2007 NEC Program. Plaintiff argues both that the GAO's decision was wrong and that the DOS's new interpretation is procedurally deficient due to the lack of notice and comment rule making and a lack of reasoned and cogent explanation. American International Contractors (Special Projects), Inc. ("AIC-SP") filed a motion to intervene as similarly situated to plaintiff. That motion was granted. Intervenor did not file a brief but did participate at oral argument. Defendant argues that the DOS's new interpretation based on the GAO's recommendation is reasonable because it gives effect to the legislative intent behind the statute and is entitled to deference as a statutory interpretation by an agency that is charged with administering it. Upon review of the record, the statute, and the parties' respective arguments, the court concludes that the DOS's withdrawal of plaintiff's and intervenor's pre-qualification was irrational, arbitrary, capricious, and not in accordance with the law.

## Factual Background

At issue in this case is the opportunity to bid on ten contracts to construct embassies around the world in the DOS's FY 2007 NEC Program. On January 3, 2007, the DOS issued a Notice of Solicitation for Submissions for Contractor Pre-Qualification ("the Pre-Qualification Notice"), which requested prospective bidders to send certifications of their compliance with the requirements of 22 U.S.C. § 4852 in order to pre-qualify to bid on the embassy projects.[1] The Pre-Qualification Notice informed offerors that the solicitation would consist of two phases: a pre-qualification phase and a request for proposals from the pre-qualified offerors. The Notice stated that "[t]hose Offerors determined to be pre-qualified in accordance with

---

[1] **Administrative Record ("AR") at 5.** The Notice contained ten NEC projects: SALMEC-07- R0006 Addis Ababa, Ethiopia; R0007 Antananarivo, Madagascar; R0009 Kinshasa, Republic of Congo; R0011 Ouagadougou, Burkina Faso, Africa; R0012 Riga, Latvia; R0013 Sarajevo, Boznia; R0014 Tijuana, Mexico; R0015 Jeddah, Saudi Arabia; R0016 Velleta, Malta; and R0017 Lusaka, Zambia. **AR at 5-6.**

this notice will be issued a formal Request for Proposal (RFP) for each project and invited to submit proposed pricing in Phase II."[2]

Section 4 of the Pre-Qualification Notice detailed the pre-qualification requirements. The relevant part instructed offerors that the acquisition was limited to bidders qualified as a "United States Person" as defined in section 402 of the Omnibus Diplomatic Security and Antiterrorism Act of 1986 ("the Act").[3] Prospective bidders were thus instructed to complete and submit certifications[4] to show that they met the requirements of section 402. Section 402 of the Act states, "The term 'United States Person' means a person which–with respect to a construction project . . . , has achieved total business volume equal to or greater than the value of the project being bid in 3 years of the 5-year period before the date specified in subparagraph (C)(i) . . . ." 22 U.S.C. § 4852(c)(2)(E) (2000). The Pre-Qualification Notice also allowed for previously pre-qualified offerors to submit a Letter of Interest in lieu of certifications if they had been pre-qualified for certain projects under the FY 2006 NEC Program. Plaintiff qualified as a previously pre-qualified offeror and submitted its Letter of Interest on January 17, 2007.[5]

The DOS replied to plaintiff by letter on February 23, 2007, stating that it anticipated plaintiff's pre-qualification for all projects on which it intended to bid, but it also requested updated certifications to be submitted before a final determination of qualification.[6] Plaintiff submitted its updated pamphlet of certifications on March 1, 2007.[7] The DOS replied to plaintiff via a letter dated April 9, 2007, notifying plaintiff that it had been pre-qualified to bid on all ten NEC Program projects.[8] The letter also informed plaintiff that all pre-qualified offerors could expect to receive RFPs in May of 2007.[9]

---

2 **AR at 6.**

3 **AR at 7.**

4 The required certifications are found at 48 C.F.R. § 652.236-72 (2006).

5 **AR at 13.**

6 **AR at 152.**

7 **AR at 170-181.**

8 **AR at 221.**

9 ***Id.***

On March 8, 2007, Caddell Construction Co., Inc. ("Caddell") filed a protest at the GAO, protesting a contract under the FY 2006 NEC Program. Caddell was an unsuccessful offeror on a contract to build a new embassy complex in Djibouti, Djibouti. Plaintiff was also an unsuccessful offeror on the Djibouti contract but was not party to the protest at the GAO. Caddell claimed, in relevant part, that the successful offeror, AIC-SP, did not qualify to bid on the project because it did not meet the business volume requirement contained in section 402 of the Act. Caddell argued that, in order to qualify as a "United States Person," the offeror had to have a total business volume equal to the value of the project bid in each of the three out of five previous years. Put another way, three out the previous five years must individually equal the value of the project being bid on. AIC-SP's business volume did not meet Caddell's proposed interpretation.

The GAO issued its opinion on June 15, 2007.[10] The GAO decided that the best interpretation of the statute requires offerors to meet the business volume requirement in each of three out of the past five years.[11] The GAO decided that the language of the statute was ambiguous. Relying heavily on the legislative history of the Act, it decided that the three individual years interpretation gave better effect to the purpose of the statute. The GAO afforded no deference to the DOS's previous interpretation, under which plaintiff had been pre-qualified for the FY 2006 and 2007 NEC Programs, because it was not "the result of either a rulemaking or an adjudication."[12]

In a letter dated June 21, 2007, the DOS informed plaintiff that its pre-qualification had been withdrawn due to the GAO decision: "Pending any further litigation, the Department has decided to follow the recommendations of GAO in the Caddell protest and to apply the standard prescribed by GAO to its FY2007 NEC projects."[13] Plaintiff filed its complaint in this court on July 2, 2007. The Abbreviated Administrative Record was filed on July 9, 2007. Plaintiff filed its motion for judgment on the administrative record on July 16, 2007, and defendant filed its response and cross-motion on July 19, 2007. Plaintiff also filed a motion to supplement the administrative record on July 19, 2007. That motion was granted in part and denied in part on July 29, 2007. AIC-SP filed its motion to intervene on July 19, 2007. The motion to intervene was granted that same day. The court heard oral argument on July 31, 2007.

---

[10] **AR at 231; *Caddell Constr. Co.*,** B-298942.2 (June 15, 2007).

[11] **AR at 241-243.**

[12] ***Id.***

[13] **AR at 252.**

## Discussion

I. Standard of Review

On a Motion for Judgment on the Administrative Record under RCFC 52.1, the court must weigh the evidence and decide the outcome of the case based on the administrative record and any subsequent supplementation. ***Bannum, Inc. v. United States***, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005). "[T]he standard for a decision on a Motion for Judgment on the Administrative Record is . . . , given all the disputed and undisputed facts, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law." ***Info. Scis Corp. v. United States***, 73 Fed. Cl. 70, 98 (2006) (citing ***Bannum***, 404 F.3d at 1357). RCFC 52.1 is "designed to provide for a trial on a paper record." ***Bannun***, 404 F.3d at 1356.

The court has jurisdiction over bid protest actions under the Tucker Act as amended in 1996. 28 U.S.C. § 1491(b)(4) (2000). The court reviews the protested agency action according to the standards set out in the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (2000). ***Impreza Construzioni Geom. Domenico Garufi v. United States***, 238 F.3d 1324, 1332 (Fed. Cir. 2001). The court must determine whether the agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). There are four factors to be considered in determining whether the agency has acted arbitrarily and capriciously. ***Keco Indus., Inc. v. United States***, 203 Ct. Cl. 566, 574 (1974). The court must determine whether: (1) there was a subjective bad faith on the part of the procuring officials; (2) there was a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; or (4) pertinent statutes and regulations were violated. ***Id.***; ***see also Banknote Corp of Am. v. United States***, 365 F.3d 1345, 1351 (Fed. Cir. 2004). The court need not find, however, that all four factors were present in order to determine that the agency acted arbitrarily and capriciously. ***Pineville Sawmill Co. v. United States***, 859 F.2d 905, 911 (Fed. Cir. 1988).

When reviewing agency action, the agency is given wide discretion in its application of procurement regulations. ***Bellevue Bus. Serv., Inc. v. United States***, 15 Cl. Ct. 131, 133 (1988). The court should only intervene "when it is clearly determined that the agency's determinations were irrational or unreasonable." ***Baird Corp. v. United States***, 1 Cl. Ct. 662, 664 (1983). Therefore, the protestor has a heavy burden of showing that the agency's decision had no rational basis. ***Impreza***, 238 F.3d at 1333 (citing ***Saratoga Dev. Corp. v. United States***, 21 F.3d 444, 456 (D.C. Cir. 1994)).

Decisions by the GAO are traditionally treated with a high degree of deference, especially in bid protest actions. ***E.W. Bliss Co. v. United States***, 33 Fed.

Cl. 123, 135 (1995), ***aff'd*** 77 F.3d 445 (Fed. Cir. 1996). Although decisions of the GAO are treated as "expert opinions," they are not binding on this court. ***Consol. Eng'g Servs., Inc. v. United States***, 64 Fed. Cl. 617, 623 (2005). When, as in this case, the issue is a question of law, it is for the court to decide, and no deference need be given to the decision at the GAO. ***See Metcalf Constr. Co. v. United States***, 53 Fed. Cl. 617 n.17 (2002).

II. The DOS's Withdrawal of Plaintiff's Pre-Qualification Was Arbitrary and Capricious Because the Business Volume Requirement Found in 22 U.S.C. § 4852(c)(2)(E) Is Cumulative for the Three Years

Plaintiff claims that the plain language of the statute "dictates cumulating the offeror's business volume in the 3 highest years over a 5-year period."[14] It points primarily to Congress' inclusion of the word "total" before the term "business volume," arguing that the word "total" connotes a "product of addition."[15] Therefore, in plaintiff's view, if the business volume requirement is not cumulative, the inclusion of the term "total" is entirely superfluous and without meaning.

Defendant answers by arguing that the statute is essentially silent or ambiguous as to whether the test is cumulative or separate. Defendant urges the court to look to the legislative history to understand the function of the business volume requirement. Defendant quotes language from the Senate Committee on Foreign Relations:

> The firm must have performed services *similar to the complexity, cost, and construction-type to that of [the] project open for bid.*
>
> The firm must have achieved a total business volume in 3 of the 5 previous years at least equal to the value of the project being bid. The two previous requirements will help ensure that a firm is *technically capable* to carry out a given project.[16]

Defendant admits that the legislative history "does not speak directly to the issue of whether the business volume requirement . . . allows an offeror to aggregate its total

---

[14] ***Pl.'s Br. in Supp. of its Mot. for J. ("Pl.'s Br. in Supp.") at 3.***

[15] ***Id.***

[16] ***Def.'s Opp'n and Cross-Mot. For J. ("Def.'s Opp'n") at 11*** (quoting S. Rep. No. 99-304 at 15 (1986) (emphasis supplied by defendant)).

business . . . ."[17] Nevertheless, defendant asserts that this language supports its view of the business volume requirement because it better serves to insure the offeror's technical capability to perform the project being bid on.[18] Defendant agrees with the GAO's decision when it states that a "cumulative reading would have 'the effect of rendering meaningless the statute's requirement for receipts at this level for 3 years within the previous 5-year period.'"[19]

A. The Plain Meaning of the Statute Establishes a Cumulative Business Volume Requirement

The court agrees with plaintiff. The language of section 4852(c)(2)(E) creates a business volume requirement that is met by cumulating the offeror's business volume in three out of the past five years. The starting point of any exercise in statutory construction is the language of the statute itself. ***Robinson v. Shell Oil Co.***, 519 U.S. 337, 340 (1997); ***See also James v. Tablerion***, 363 F.3d 1352, 1359 (Fed. Cir. 2004).

A statute should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant." ***Duncan v. Walker***, 533 U.S. 167, 174 (2001) (quoting ***Market Co. v. Hoffman***, 101 U.S. 112, 115 (1879)). Section 4852(c)(2)(E) requires that an offeror "has achieved total business volume equal to or greater than the value of the project being bid in 3 years of the 5-year period before the date specified in subparagraph (c)(I)." The word "total" before the term "business volume" indicates that the requirement is met by adding three out of the past five years to equal the offeror's "total business volume." If the section is read without the word "total," it is completely unclear whether the three years are to measured individually or cumulatively. The inclusion of the word "total" modifies the term "volume" and informs the reader that the volume in question will be, as plaintiff

---

[17] ***Id.* at 12.**

[18] The DOS's position before the GAO in the ***Caddell*** protest was the opposite. "Use of the phrase 'total business volume' would appear to militate in favor of cumulating the volume in the three highest business volume years over a 5-year period . . . ." DOS's Agency Report to the GAO (April 9, 2007) at 19-20 (as supplement to the **AR**). "Inference of a statutory intent to create the higher bar sought by Protestor is not supported by the statutory language or by the legislative history . . . ." DOS's Letter in Response to Specific Questions Raised by the GAO (May 16, 2007) at 4 (as supplement to the **AR**).

[19] ***Def.'s Opp'n at 14*** (quoting **AR at 241**).

states, "a product of addition."[20] Measuring the three years cumulatively gives meaning to the word "total" and avoids a construction that leaves language "superfluous, void, or insignificant." ***See Duncan***, 533 U.S. at 174.

Additionally, the Diplomatic Construction Program is subject to a ten-percent small business set-aside. 22 U.S.C. § 4852(e) ("Not less than 10 percent of the amount appropriated . . . shall be allocated to the extent practicable for contracts with American small business contractors"). The GAO's interpretation would have the net effect of exempting embassy construction contracts from the small business set-aside.[21] The Presoliciation Notice for FY 2007 NEC Program states that set-asides are subject to NAICS code 236220–the code for Commercial and Institutional Building Construction.[22] As plaintiff points out, in order to qualify under code 236220, an offeror's average annual revenue cannot exceed $31 million during the three most recent years. ***See*** 13 C.F.R. §§ 121.201, 121.104(c)(1) (2006). The estimated cost range for the ten projects listed in the Pre-Qualification Notice span from $63-$73 million to $83-$93 million.[23] If the business volume requirement is read as requiring each individual year to equal the value of the project being bid, no potential offeror qualifying under NAICS code 236220 could qualify under the business volume requirement. The potential offeror would be required to show a business volume in each of the three years of approximately $63 million in order to bid on the smallest project, thus eliminating any small business offerors with business volumes of $31 million or lower.

The individual interpretation of the business volume requirement would cause a statutory inconsistency: subsection (c)(2)(E) would, for all practical purposes, not be subject to subsection (e). Such a result should be avoided. Courts should interpret statutes as a "coherent regulatory scheme," giving effect to all the statute's provisions. ***FDA v. Brown & Williamson Tobacco Corp.***, 529 U.S. 120, 133 (2000); ***see also Perez v. MSPB***, 85 F.3d 591, 594 (Fed. Cir. 1996). The inclusion of a small

---

[20] ***Pl.'s Br. in Supp. at 3*** (quoting Merriam-Webster's Collegiate Dictionary 1320 (11th Ed. 2003)).

[21] Defendant argued during the oral argument that the small business preference would not be written out of the statute because it would still apply to smaller contracts under section 4852(a)(2)–projects "which involve[] technical security . . . ." That is irrelevant. The language of the statute indicates that the small business preference is meant to apply to all contracts under section 4852.

[22] **AR at 3**. NAICS stands for North American Industrial Classification System.

[23] **AR at 5-6.**

business set-aside is further evidence that Congress intended the business volume requirement to be cumulative.

A cumulative construction of the business volume requirement does not, as defendant argues, have the effect of writing the three-year period out of the statute. Simply put, an offeror must still identify three years, whether they be consecutive or not, in order to meet the required business volume. The court recognizes that this could potentially mean that an offeror meets the business volume requirement by aggregating one year of high business volume with two years of low or even no business volume. While defendant and the GAO argue that such a situation would be contrary to the legislative intent, such considerations are questions of policy and the wisdom of Congress. It will suffice to say that Congress answered such concerns by limiting the period to three out of five years and not some longer period such as ten years. If the offeror meets the business volume requirement in only one year, Congress has decided that, within a five-year period, that one year will suffice. The court should not substitute its own policy judgments for that of Congress. ***Eldred v. Ashcroft***, 537 U.S. 186, 222 (2003); ***Minnesota v. Clover Leaf Creamery Co.***, 449 U.S. 456, 481 (1981). The statute is clear, the total business volume requirement is met by cumulating three out of the past five years.

B. The Legislative History Is Inconclusive and Does Not Lend Support to a Statutory Construction Contrary to the Plain Language of the Statute

While it is not necessary to consult the legislative history when the statutory provision is clear, the court considers it only so far as to note that it is inconclusive and to show that it is not inconsistent with the plain language of the statute. The court agrees with the GAO and defendant that the legislative history does indicate that Congress created the business volume requirement to help ensure an offeror's technical capability to perform the project being bid on. As previously noted, defendant admits that the quoted language from the Senate Report does not answer the question of whether the requirement is met by three aggregated years or three individual years. Congress answered the question by wording the business volume requirement as it did.

The cumulative three-year requirement does not contradict the stated purpose of ensuring that an offeror has performed projects of similar magnitude, cost, and

type. The projects being bid on are known to be multi-year projects.[24] Both the DOS and the offeror knew that these projects are completed over a period of multiple years. Offerors submit proposals that assume that the total cost will be spread across several years. This fits hand in hand with the three-year cumulative business volume requirement. Congress created a system whereby offerors display their capability to perform multi-year projects by showing their total business volume over three years out of the previous five. While this is not dispositive on the question of cumulative versus individual, it does show that the statutory purpose is not defeated by the cumulative reading of the total business volume requirement.

Section 4852(c)(2)(E) creates a cumulative total business volume requirement that is met by aggregating three out of the previous five years. Plaintiff met the cumulative three-year requirement as is evidenced by the DOS's initial pre-qualification of plaintiff for the 2007 program and plaintiff's pre-qualification under the 2006 program. The DOS's subsequent withdrawal of plaintiff's pre-qualification based on the GAO's decision was without a reasonable basis and thus arbitrary and capricious.

C. The DOS's New Interpretation Treats Identical Statutory Language Different Without Justification

Furthermore, adoption of the DOS's new interpretation would create the untenable situation whereby the DOS would be interpreting two identical statutory provisions differently. Plaintiff brings to the court's attention the total business volume requirement found in a related statute: 22 U.S.C. § 4864(d)(1)(E) (2000). Section 4864(d)(1)(E), part of the Local Guard Program, states that an offeror must "ha[ve] achieved a total business volume equal to or greater than the value of the project being bid in 3 years of the 5 year period . . . ." The implementing regulations for sections 4852 and 4864 were published simultaneously and contain the identical definitions of the terms "3 years of the 5-year period" and "total business volume."

---

[24] The court asked each of the parties at oral argument what the typical duration of NEC projects is. Plaintiff: "Typically they last two to three years. Sometimes they're slightly shorter. Sometimes they're slightly longer." **Oral Arument Transcript ("Tr.") at 18.** Intervenor: "One of the projects . . . will take approximately two years to complete . . . . So it was a minimum of two years for the Djibouti new construction." **Tr. at 22-23.** Defendant: "My understanding is they can take, depending upon whether or not it's an embassy being built from scratch or if it's just sort of a renovation project, they can run from one year to multiple years." **Tr. at 32.**

***Compare*** 48 C.F.R. § 652.236-72 ***with id.*** § 652.237-73 (2006).[25] The latter also includes an additional sentence that explains how an offeror is to meet the business volume requirement: "An entity will be deemed to have met this requirement if the total cumulative business volume for the three years presented exceeds the contract price at time of award . . . ." 48 C.F.R. § 652.237-73. Plaintiff does not explain why no corresponding sentence is found in the former section. Plaintiff argues, however, that this does show the DOS's longstanding interpretation of the business volume requirement and that "[t]he GAO, therefore, overlooked 'an elementary principal of statutory construction that similar language in similar statutes should be interpreted similarly.'"[26]

Defendant counters that section 4864 and its regulations are part of a separate and dissimilar statute and therefore should not be read *in pari materia*. Defendant accepts that "statutes relating to the same subject matter should be construed together as a whole."[27] According to defendant, the subject matter of the statutes here is different–embassy construction contracts versus embassy security contracts–and they were enacted to accomplish different objectives–Diplomatic Construction Program for the purpose of qualifying to bid on the projects and the Diplomatic Security Program for the purpose of qualifying for a ten-percent price preference.

"Statutes must be interpreted according to the intent and meaning of the legislature; . . . if the language is ambiguous, it may be collected from other acts in pari materia, in connection with the words, and sometimes from the cause or necessity of the statute . . . ." ***New Lamp Chimney Co. v. Ansonia Brass & Copper Co.***, 91 U.S. 656, 662-63 (1876). As a preliminary matter, as quoted above, if the

---

[25] 48 C.F.R. §§ 652.236-72 and 652.237-73 read in relevant part:

> 3 years of the 5-year period before the date specified . . . means the three to five calendar year period immediately preceding the issuance date of this solicitation.
>
> Total business volume means the U.S. dollar value of the gross income or receipts reported by the prospective [offeror] on its annual federal income tax returns.

[26] ***Pl.'s Br. in Supp. at 12-13*** (quoting ***United States v. Sioux***, 362 F.3d 1241, 1246 (9th Cir. 2004) (citing ***Northcross v. Bd. of Educ. of Memphis City Schs.***, 412 U.S. 427, 428 (1973))).

[27] ***Def.'s Br. in Opp. at 19*** (citing ***Page v. United States***, 49 Fed. Cl. 521, 528 n.10 (2001)).

intent and meaning of the statute is clear from the plain meaning, no further consideration is necessary. As explained in section IIA above, the language of the statute is clear and thus controlling. Although it is not necessary for this holding, the court treats the issue of the identical statutory provisions as providing further evidence of the intent of the statute.

Defendant is correct that the statutory canon of *in pari materia* does not apply when the similar provisions deal with different subject matters. ***Wachovia Bank v. Schmidt***, 546 U.S. 303, 315-16 (2006) (declining to read a statutory venue provision to require the identical construction of a statute dealing with subject matter jurisdiction). The fact that the programs deal with contracts for different services is of no significance. The closer question arises due to the fact that under the Diplomatic Construction Program, an offeror must qualify as a "United States person" in order to qualify to submit an offer, while under the Local Guard Program, an offeror must meet the definition in order to qualify for a ten-percent price preference. ***Compare*** 22 U.S.C. § 4852(a) ("only United States persons . . . may – (1) bid on diplomatic construction or design project") ***with Id.*** § 4864(c)(3) ("United States persons . . . shall be evaluated by reducing the bid price by 10 percent"). That difference, although significant, is not dispositive.

On the surface, it appears that the two provisions are dealing with different subjects. A closer consideration reveals a different result. What is of crucial importance is what the particular purpose of the business volume requirement is in each of the statutes. Both provisions deal explicitly with qualifying as a "United States person." As evidenced by the legislative history of section 4852, the business volume requirement is concerned with ensuring an offeror's technical capability to perform the project being bid on by ensuring that the offeror has performed contracts of similar cost and complexity. ***See supra*** § IIB. This is undoubtedly also the purpose behind its inclusion in section 4864. Thus, the identical language in provisions that both deal with ensuring the technical capability of offerors should be read identically.

The DOS made it explicit in its regulations dealing with section 4864 that the business volume requirement is to be read cumulatively. Although the regulations dealing with section 4852 lack this explicit explanation, the fact that the provisions were included in their respective statutes to deal with the exact same concern, compels this court to treat them similarly. If this court were to follow the decision of the GAO, the DOS would be put in the untenable situation of treating identical statutory provisions dissimilarly. Such a result must be avoided. Identical provisions, included to address the identical concern, must be read as requiring the same interpretation. The total business volume requirement is cumulative.

III. The DOS's Adoption of the GAO's Recommendation Is not Entitled to Judicial Deference

Plaintiff also claims that the DOS's original and "long-standing"[28] interpretation of the statute should have been afforded deference by the GAO because it was an agency's interpretation of a statute that it was entrusted to enforce. Defendant argues that the level of deference paid by the GAO to the DOS's prior interpretation is "irrelevant to the single issue currently before the Court."[29] Defendant correctly points out that, "[t]his [c]ourt . . . does not sit in review of GAO decisions."[30] Defendant concludes, however, rather remarkably, that the DOS's adoption of the GAO's recommendation is a new agency interpretation and should thus be entitled to judicial deference. This is remarkable for two reasons. First, the DOS argued before the GAO that its original interpretation should have been afforded deference, yet the GAO afforded it none.[31] Second, such a holding would have the effect of shielding agency action from any meaningful review by this court.

Although the court does not specifically reach the question of whether the GAO afforded proper deference to the DOS's original interpretation under ***Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.***, 467 U.S. 837 (1984), the court must address defendant's argument for affording deference to the DOS's new interpretation. Adoption of defendant's position would effectively strip this court of any real review in any case where the agency followed a recommendation of the GAO on an interpretation of a statute or regulation. The court declines to play that shell game. In entrusting this court with bid protest jurisdiction under APA

---

[28] The Administrative Record shows that the DOS employed the cumulative approach at least twice prior to the GAO's decision in ***Caddell***: the FY 2006 NEC Program and initially in the FY 2007 NEC Program.

[29] ***Def.'s Opp'n* at 15.**

[30] ***Id.*** (citing ***Cubic Applications, Inc. v. United States***, 37 Fed. Cl. 345, 353 (1997).

[31] It is informative to note that the DOS's position before the GAO was that its original, cumulative interpretation of the business volume requirement should have been afforded deference as a valid agency interpretation. DOS's Agency Report to the GAO (April 9, 2007) at 20 (as supplement to the **AR**); DOS's Letter in Response to Specific Questions Raised by the GAO (May 16, 2007) at 5 (as supplement to the **AR**). The GAO declined to do so because in its view the DOS's interpretation was "only an informal interpretation" where "'Chevron deference' is not warranted." **AR at 241.** Defendant now turns this reasoning on its head and asserts that the previously disregarded deference should be afforded to the DOS's new interpretation.

standards, Congress necessarily meant for the court to undertake a meaningful review of agency action.

Defendant cites ***Honeywell, Inc. v. United States***, 870 F.2d 644 (Fed. Cir. 1989), in support of its argument. ***Honeywell*** stands for the rule that "a procurement agency's decision to follow the [GAO]'s recommendation . . . was proper unless the [GAO]'s decision itself was irrational." 870 F.2d at 648. In order to review an agency's action when it is based upon the recommendation of the GAO, it is necessary to examine the underlying decision of the GAO. ***See Firth Const. Co. v. United States***, 36 Fed. Cl. 268, 271-72 (1996) (citing and applying ***Honeywell*** to overturn agency action that was based on a decision of the GAO). The GAO decision constitutes the very reason(s) for the agency action. Put another way, an agency action is not insulated from meaningful review simply because the GAO recommended it.

The DOS's withdrawal of plaintiff's and intervenor's pre-qualification to bid was based entirely upon the recommendation of the GAO. In fact, in its Notice of Withdrawal of Prequalification for FY 2007 NEC Program, the DOS stated that it was following the recommendations of the GAO in the ***Caddell*** protest "pending any further litigation."[32] In order to review the DOS's action, the court must probe the reasoning of the GAO's decision. In this case, the GAO decided that the DOS's original interpretation of the business volume requirement was contrary to the legislative intent behind the statute. The GAO's decision was, however, irrational because it misread both the actual language of the statute and the legislative history. As held in section II, the plain language of section 4852(c)(2)(E) dictates that the business volume requirement is met by cumulating three out of the previous five years. Therefore, the DOS's adoption of the GAO's recommended interpretation is afforded no deference because it is plainly lacking a reasonable basis and is thus arbitrary and capricious. That being the case, it is unnecessary to reach plaintiff's argument that the GAO failed to afford proper deference to the DOS's original interpretation. The question is not one of proper deference but rather statutory interpretation.

<u>Conclusion</u>

Because the GAO failed to properly read the business volume requirement contained in section 4852(c)(2)(E), its recommendation to the DOS was not in accordance with the law and lacked a rational basis. Therefore, the DOS's reliance on the GAO's decision and withdrawal of plaintiff's and intervenor's pre-qualification for the FY 2007 NEC Program was arbitrary, capricious, and not in accordance with the law. Based on the foregoing, the following is hereby ordered:

---

[32] **AR at 252.**

Plaintiff's Motion for Summary Judgment on the Administrative Record is ALLOWED. Defendant's Cross-Motion for Judgment on the Administrative Record is DENIED. In addition, the DOS shall reinstate plaintiff's and intervenor's pre-qualifications for the FY 2007 NEC Program to allow them to compete for contract awards thereunder.

Any party who seeks the redaction of any proprietary or confidential information from the public version of this opinion shall file under seal its request for redactions by Friday, August 10, 2007. The Clerk shall enter judgment in accordance with this Opinion. No costs.

IT IS SO ORDERED.

**s/Bohdan A. Futey**
**BOHDAN A. FUTEY**
**Judge**